Case 2:14-cv-00733-BSJ   Document 23   Filed 11/23/15   Page 1 of 12

FILED
2015 NOV 23 AM 10:33
CLERK
U.S. DISTRICT
COURT

Richard M. Hymas (USB # 1612)
Bret F. Randall (USB # 6634)
DURHAM JONES & PINEGAR
Attorneys for Defendant
111 E. Broadway, Suite 900
Salt Lake City, UT 84111
Telephone (801) 415-3000
Facsimile (801) 415-3500
Email: rhymas@djplaw.com
Email: brandall@djplaw.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KEVIN LEE ANGEL,<br><br>    Plaintiff,<br>v.<br><br>LISBON VALLEY MINING CO. LLC,<br><br>    Defendant. | [~~PROPOSED~~] MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:14-cv-00733 BSJ |

This matter is before the Court on Defendant's Motion for Summary Judgment. Following briefing by the parties, the Court held a hearing on the Motion on November 9, 2015. Plaintiff was represented by David Holdsworth. Defendant was represented by Richard M. Hymas and Bret F. Randall. Having fully considered the Motion, memoranda, exhibits, declarations, and other evidence submitted by the parties, as well as the arguments of counsel made at the hearing, and the undisputed facts and applicable law relevant to the Motion, the Court granted the Motion. The Court now enters its Memorandum Decision and Order, setting forth the basis for its decision.

## BACKGROUND

Plaintiff Kevin Lee Angel ("Angel") alleges claims against Defendant Lisbon Valley Mining Co. LLC ("Lisbon Valley") for disability discrimination, failure to provide reasonable accommodation, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA").

Lisbon Valley operates a copper mine in San Juan County, Utah. From October 2011 to January 2012, Angel was employed by Lisbon Valley as a haul truck driver, a safety-sensitive position. While interviewing for the job, Angel was told about Lisbon Valley's prescription drug policy and was given a document setting forth the terms of the policy, which he read and signed.[1]

On January 12, 2012, while undergoing a random drug test, Angel tested positive for oxycodone, and was placed on administrative leave.[2] Lisbon Valley learned from Angel that he had obtained a prescription for oxycodone in December 2011, and that he had been taking the medication, while continuing to work, without notifying human resources, presenting a copy of the prescription to human resources, or obtaining a work release from the company's occupational physician, all in violation of the prescription drug policy.[3] Lisbon Valley terminated Angel's employment a few days later based on his failure to comply with Lisbon Valley's prescription drug policy.[4]

Angel timely filed a charge of discrimination against Lisbon Valley with the Utah Labor Commission's Antidiscrimination and Labor Division (the "UALD") and the Equal Employment Opportunity Commission (the "EEOC"), claiming disability discrimination under the ADA.

---

[1] Declaration of Cyndi Eldredge ("Eldredge Decl.") at ¶ 14 & Ex. F thereto; Deposition of Kevin Lee Angel dated Aug. 27, 2015 ("Angel Depo.") at 32:1-23.
[2] Eldredge Decl. ¶¶ 19-20 & Ex. I thereto; Angel Depo. 82:23-25, 86:8-12.
[3] Eldredge Decl. ¶¶ 21-23; Angel Depo. 77:8-81:5, 88:7-23.
[4] Eldredge Decl. ¶ 24 & Ex. L thereto; Angel Depo. 92:5-10, 96:23-97:2.

Angel later amended the charge to add a retaliation claim. After completing its investigation, the UALD issued a Determination and Order, dated March 6, 2013, finding that there was "no reasonable cause" to believe that Angel was subjected to the discriminatory practices alleged. Angel appealed the no-cause determination to the appeals unit of the UALD, but later withdrew his charge and obtained a right-to-sue letter. This action followed.

Lisbon Valley has filed a motion for summary judgment against Angel on all claims alleged in Angel's Complaint. The Court has determined that, based upon the undisputed evidence presented, there is no genuine issue of material fact and Lisbon Valley is entitled to judgment as a matter of law.

## UNDISPUTED FACTS

The following facts are undisputed:

1. During a pre-employment interview, after Angel reviewed the job description for the haul truck driver job for which he was applying, he was specifically asked whether there was anything listed under the essential duties or physical requirements of the job that he could not perform with or without a reasonable accommodation. He said no.[5]

2. During that interview, Angel did not state that he had a disability, nor did he request, or state that he needed, any accommodation in order to perform the duties of the job.[6]

3. During that interview, Angel was told about Lisbon Valley's prescription drug policy, which applies to haul truck drivers. He was given a document setting forth the terms of the policy, which he read and signed.[7]

---

[5] Eldredge Decl. ¶ 11.
[6] Eldredge Decl. ¶ 12; Angel Depo: 22:13-17, 25:18-22, 103:2-7.
[7] Eldredge Decl. ¶ 14 & Ex. F thereto; Angel Depo. 32:1-23.

4. In a subsequent pre-employment meeting, while reviewing and discussing the prescription drug policy, Angel told Lisbon Valley's human resources manager that he sometimes took medication for back pain but that he was not taking any medication at the time. Angel did not state at that time that he had a disability or that he required any type of accommodation in order to perform the duties of his job.[8]

5. The prescription drug policy provides that employees taking prescription drugs that may impair their ability to safely perform their job must inform human resources of the use of such medication, provide human resources with a copy of the prescription for any such medication, and obtain a release from Lisbon Valley's occupational physician authorizing the employee to work and specifying any work restrictions that must be followed, before the employee may return to work. The policy further states that an employee's failure to disclose that the employee is taking prescription medication could result in immediate termination.[9]

6. Angel was fully aware of the policy's requirements and agreed to comply with them. Specifically, he was aware that the policy required him to disclose the use of oxycodone before working, regardless of his beliefs about his ability to work safely while taking that drug.[10]

7. During a random drug screening test on January 12, 2012, Angel tested positive for oxycodone and was placed on administrative leave.[11]

8. Angel had obtained a prescription for oxycodone in December 2011 and had begun using oxycodone at that time. Angel had not informed human resources of that prescription, presented a copy of the prescription to human resources, or provided human

---

[8] Eldredge Decl. ¶¶ 15-16.
[9] Eldredge Decl. ¶ 14 & Ex. F thereto.
[10] Angel Depo. 34:25-36:6, 37:20-42:2, 64:3-10, 64:19-22, 147:22-148:23, 149:16-150:6.
[11] Eldredge Decl. ¶¶ 19-20.

resources with a doctor's release prior to taking the medication and reporting to work, as required by the prescription drug policy.[12]

9. Angel's actions violated Lisbon Valley's prescription drug policy, which he acknowledged in his deposition.[13]

10. On January 13, 2012, one day after the random drug test, Angel showed Lisbon Valley's human resources manager his bottle of oxycodone and a note from the company's occupational physician dated that day.[14] Neither the prescription bottle nor the doctor's note indicated that Angel suffered from a disability or needed an accommodation for a disability.[15]

11. In fact, at no time while he was employed by Lisbon Valley did Angel ever tell Lisbon Valley that he had a disability, nor did he ever ask Lisbon Valley for an accommodation for a disability or inform Lisbon Valley that he needed an accommodation for a disability.[16]

12. On January 19, 2012, Lisbon Valley notified Angel that he had been terminated because of his violation of the company's prescription drug policy.[17]

13. Lisbon Valley has terminated the employment of every other employee who it has learned has violated the company's prescription drug policy.[18]

## STANDARD OF REVIEW

Summary judgment is warranted if the facts in the record and reasonable inferences drawn favorably to the plaintiff "could not lead a rational trier of fact to find for the [plaintiff]."[19]

---

[12] Eldredge Decl. ¶¶ 21-23; Angel Depo. 77:8-81:5, 88:7-16.
[13] Angel Depo. 88:17-19.
[14] Eldredge Decl. ¶¶ 21-22.
[15] Eldredge Decl. Ex. J and Ex. K.
[16] Eldredge Decl. ¶¶ 5-6, 10-13, 16, 25, 27, 30; Angel Depo. 22:13-18, 25:18-22, 103:2-7.
[17] Eldredge Decl. ¶ 24; Angel Depo. 92:5-10, 96:23-97:9.
[18] Eldredge Decl. ¶ 29.
[19] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Bustos*

# ANALYSIS

## I. DISCRIMINATORY DISCHARGE UNDER THE ADA

In analyzing ADA cases, this Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[20] Under *McDonnell Douglas*, the employee has the burden of establishing a prima facie case of disability discrimination.[21] If the employee does that, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.[22] Once an employer has provided a nondiscriminatory reason for its actions, any presumption of discrimination "simply drops out of the picture."[23] At this point, the employee must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief."[24] "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'"[25] The employee retains the ultimate burden of persuasion throughout the case.[26]

### A. Prima Facie Case

---

*v. A & E Television Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (concluding that a claim was amenable to summary judgment where "no reasonable juror could find" in favor of the plaintiff); *Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001) (stating that a ruling granting summary judgment "means that no triable issue exists to be submitted to a jury").

[20] The *McDonnell Douglas* analysis applies where, as here, the employee lacks direct evidence of intentional discrimination. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).
[21] *See id.*
[22] *See id.*
[23] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).
[24] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).
[25] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038-39 (10th Cir. 2011) (quoting *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (alteration in original)) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008)).
[26] *See Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 748 (10th Cir. 1999).

To establish a prima facie case of disability discrimination under the ADA, an employee must prove that he is disabled (as defined by the ADA), that he is qualified for his job, and that he was fired because of his disability.[27] This final prong of the test "requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision."[28] Angel has not met his burden of proof.

According to Lisbon Valley, the company did not know that Angel claimed to have a disability prior to his termination.[29] And Angel admitted in his deposition that he never told Lisbon Valley that he had a disability.[30] Angel contends, however, that after he tested positive for oxycodone, he put Lisbon Valley on notice that he had a disability by informing human resources that the oxycodone was for a back impairment and by providing human resources with his prescription bottle and a note from the company's occupational physician. Opp. Memo. at 24. Neither the prescription bottle nor the doctor's note says anything about Angel having a disability.[31] And even if Angel said he was taking the oxycodone for back pain, such a statement is not enough to give notice to Lisbon Valley that he claimed to have a disability.

Because the undisputed evidence establishes that Lisbon Valley did not know that Angel claimed to have a disability prior to his termination, Angel's alleged disability could not have been a determining factor in Lisbon Valley's decision to terminate his employment. As a result, Angel cannot establish his prima facie case of discriminatory discharge.

---

[27] *White v. York Intern Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995); *see also Morgan*, 108 F.3d at 1323.

[28] *Morgan*, 108 F.3d at 1324 ("The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law.").

[29] Eldredge Decl. ¶ 26.

[30] Angel Depo. 100:23-101:1, 103:2-4.

[31] Eldredge Decl. Ex. J and Ex. K.

### B.   Pretext

Even if Angel had established a prima facie case, he did not rebut the legitimate, non-discriminatory reason articulated by Lisbon Valley for its actions. Lisbon Valley explained that Angel was terminated because he violated the company's prescription drug policy. Angel has presented no evidence to show that this explanation is a pretext.

In his deposition, Angel admitted that he violated the prescription drug policy by using oxycodone and then coming to work without first notifying human resources that he was taking oxycodone, providing human resources with a copy of the prescription, and obtaining a release from the company's occupational physician.[32] Angel further acknowledged that he was informed that his termination was based on his failure to comply with the prescription drug policy.[33] He also admitted that he is not aware of any facts that would suggest that his termination was for a reason other than his violation of the policy.[34]

Angel argued that Lisbon Valley's reason for his termination was pretextual because he did not violate the policy, supposedly because the policy did not apply to him. But Angel's deposition testimony, in which he admits that the policy did apply to him and that he understood he was obligated to comply with the policy, contradicts that argument.[35] Moreover, whether or not Angel actually violated the prescription drug policy is not relevant to the issue of pretext. Under Tenth Circuit case law, the analysis for Angel's pretext claim must focus on the question of whether Lisbon Valley reasonably believed that Angel violated the prescription drug policy at the time it made the decision to terminate his employment, not whether a policy violation

---

[32] Angel Depo. 77:8-81:5, 88:7-88:19.
[33] Angel Depo. 96:23-97:9.
[34] Angel Depo. 98:14-20, 100:15-19, 103:24-104:5.
[35] Angel Depo. 79:6-80:23, 147:22-148:23, 149:16-150:6.

actually occurred.[36] Angel has not presented any evidence to show that Lisbon Valley did not believe that Angel violated the policy or that Lisbon Valley terminated him for any reason other than this policy violation.

Based on the foregoing, Lisbon Valley is entitled to summary judgment on Angel's discriminatory discharge claim.

## II. FAILURE TO ACCOMMODATE

Under section 102(b)(5)(A) of the ADA, an employer can unlawfully "discriminate" against an employee by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."[37] "The statute thus establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them."[38] "To facilitate the reasonable accommodation, '[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties.'"[39] However, before an employer's duty to provide reasonable accommodations—or even to participate in the "interactive process"—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice.[40] Although the notice or request "does not have to be in writing, be made by

---

[36] *See, e.g., Tesh v. U.S. Postal Service*, 349 F.3d 1270 (10th Cir. 2003) ("But since we must assess pretext by examining the facts as they appear to the person making the decision to terminate, the question is not the factual accuracy of the memo but whether USPS reasonably 'perceived' that it was accurate.").
[37] 42 U.S.C. § 12112(b)(5)(A); *accord Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir. 1996).
[38] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001).
[39] *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (alteration in original) (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)); *see also* 29 C.F.R. § 1630.2(o)(3).
[40] *See, e.g., Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) ("In general, the interactive process must ordinarily begin with the employee providing notice to the employer of

the employee, or formally invoke the magic words 'reasonable accommodation,'" it "nonetheless must make clear that the employee wants assistance for his or her disability."[41]

Specifically, "the employer must know of both the disability and the employee's desire for accommodations for that disability."[42] An employer's mere awareness of an employee's physical condition is insufficient to carry a plaintiff's burden of proof that he or she requested an accommodation or otherwise engaged in the "interactive process" required by the ADA.[43] The "employee must make an adequate request for a reasonable accommodation for the disability."[44]

As stated above, the undisputed evidence establishes that Angel did not tell Lisbon Valley that he had a disability, nor did he put Lisbon Valley on notice that he had a disability. Angel also never asked for an accommodation.[45] Angel's actions of giving Lisbon Valley his prescription bottle and a note from the company's occupational physician after he tested positive for oxycodone did not put Lisbon Valley on notice that he was asking for an accommodation for a disability.

Even if Angel had notified Lisbon Valley after he tested positive for oxycodone that he had a disability and needed an accommodation for the disability (which he did not), Angel still could not prevail on his failure to accommodate claim. Under Tenth Circuit precedent, since reasonable accommodation is always prospective, Lisbon Valley would not have been required

---

the employee's disability and any resulting limitations. . . .").
[41] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3rd Cir. 1999) (emphasis added).
[42] *C.R. England*, 644 F.3d at 1049 (quoting *Taylor*, 184 F.3d at 313).
[43] *See id.* at 1049-50.
[44] *Dinse v. Carlisle Foodservice Products Inc.*, 541 Fed.App. 885 (10th Cir. 2013) (unreported) (citing *C.R. England*, 644 F.3d at 1049) ("The request for accommodation must be sufficiently direct and specific, giving notice that [the employee] needs a special accommodation.").
[45] Eldredge Decl. ¶¶ 15, 27; Angel Depo. 101:2-4, 103:5-7.

to excuse Angel's violation of the prescription drug policy. Retroactive accommodation for a disability is not required under the ADA.[46]

Based on the foregoing, summary judgment is warranted on Angel's denial of accommodation claim.

### III. RETALIATION

In order to establish a prima facie case of retaliation under the ADA, an employee must demonstrate that (1) he engaged in activity protected by the ADA, (2) he was subjected to an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse action."[47]

A request for a reasonable accommodation for a disability constitutes a protected activity.[48] But as set forth above, the undisputed evidence shows that Angel did not ask Lisbon Valley for an accommodation as required by the ADA. Thus, Angel cannot establish the first element of his prima facie case of retaliation.

Angel also cannot establish the third element of his prima facie case. For the reasons stated above, Angel has not produced any evidence demonstrating a causal connection between

---

[46] *Davila v. Qwest Corp.*, 113 Fed.Appx. 849, 854 (10th Cir. 2004) (unreported) (citing *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999); *Burch v. Coca–Cola Co.*, 119 F.3d 305, 320 n. 14 (5th Cir. 1997) (following *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995)); *Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1107–08 (Fed. Cir. 1996); *Green v. George L. Smith II Ga. World Congress Ctr. Auth.*, 987 F.Supp. 1481, 1484-85 (N.D. Ga. 1997)). As the EEOC's Enforcement Guidance succinctly states, "'[s]ince reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.'" *Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp. 2d 993, 1007 (S.D. Ind. 2000) (quoting U.S. Equal Opportunity Employment Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act at 24).
[47] *Holly v. Kindred Healthcare Operating, Inc.*, 51 F. Supp. 3d 1113, 1123 (D. Utah 2014).
[48] *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12 (1st Cir. 1997).

the termination of his employment and any protected activity. To the contrary, the undisputed evidence in the summary judgment record establishes that Angel's employment was terminated because he failed to comply with Lisbon Valley's prescription drug policy, and that Lisbon Valley was not aware that Angel claimed to have a disability until after his employment at Lisbon Valley had ended. Given that evidence, Angel cannot establish a causal connection between any protected activity engaged in by him and the loss of his employment. As a result, Lisbon Valley is entitled to summary judgment on Angel's retaliation claim.

## CONCLUSION

Based on the above reasoning, Lisbon Valley's Motion for Summary Judgment is GRANTED. Because this ruling disposes of all of Angel's claims, the Clerk of Court is directed to enter judgment in favor of Lisbon Valley and close the case.

DATED this 23 day of Nov., 2015.

BRUCE S. JENKINS
United States Senior District Judge

Approved as to form and content:

/s/ David Holdsworth *(signed by drafting counsel with permission)*
David Holdsworth, Attorney for Plaintiff